UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:  CASE NO. 08-51207

EAST CAMERON PARTNERS, L.P.  CHAPTER 11

DEBTOR

---

EAST CAMERON PARTNERS, L.P.

PLAINTIFF

VERSUS  ADV. NO. _____

OPEN CHOKE EXPLORATION, LLC,
OPEN CHOKE ENERGY, LLC

DEFENDANTS

## COMPLAINT OF EAST CAMERON PARTNERS, LP

NOW INTO COURT, through undersigned counsel, comes the Debtor, East Cameron Partners, LP ("ECP"), which files this Complaint (the "Complaint"), and would respectfully show the Court as follows:

### I. PARTIES

1.

ECP is a Texas limited partnership with its principal place of business at 2425 Fountainview, Ste. 100, Houston, Texas 77057, and may be served with process through its undersigned attorneys of record.

2.

On October 16, 2008 (the "Petition Date"), ECP filed a voluntary petition for relief in the above captioned-case, in which ECP remains a debtor and debtor-in-possession.

3.

On May 18, 2009, Goldking Energy Capital Management, LLC was appointed as ECP's chief restructuring officer, and is now managing the operations of ECP.

4.

Defendant, Open Choke Exploration, LLC ("OCX"), is a Texas limited liability company with its principal place of business at 2425 Fountainview, Ste. 100, Houston, Texas 77057. OCX may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

5.

Defendant, Open Choke Energy, LLC ("OCE"), is a Texas limited liability company with its principal place of business at 2425 Fountainview, Ste. 100, Houston, Texas 77057. OCE may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

6.

This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## III. NATURE OF CASE

7.

By this Complaint, ECP seeks to avoid the fraudulent transfer to OCX - its affiliated company - of ECP's exclusive right to develop hydrocarbons under an oil and gas lease related to

portions of East Cameron Block 72 (the "EC 72 Transfer"). At the time of the EC 72 Transfer, both ECP and OCX were subject to the complete control of Campbell Evans – he served as the president of OCX and the managing member of OCE, the general partner of ECP.

8.

OCX failed to pay reasonably equivalent value or fair consideration for the EC 72 Transfer, which occurred in November 2007 when ECP was (i) insolvent, (ii) unable to pay its debts as they became due, (iii) engaging in business for which it had unreasonably small capital, and (iv) incurring debts beyond its ability to pay.

9.

Further, upon information and belief, this related-party transaction was made with the actual intent to delay, hinder and defraud ECP's creditors in that the right to develop portions of East Cameron Block 72 was taken out of the reach of ECP's creditors and placed into a related company without ever being exposed to the market.

10.

ECP has both contingent and liquidated creditors, some of which have allowable claims and could avoid the EC 72 Transfer. Accordingly, the EC 72 Transfer should be avoided under 11 U.S.C. §§ 544 and 548, and recovered under 11 U.S.C. § 550 for the benefit of ECP's estate.

## IV. BACKGROUND FACTS

### A. East Cameron Partners And The Leasehold Interests

11.

ECP is an independent oil and gas exploration and production company that holds leasehold interests in a producing natural gas and condensate field in federal waters off the United States, approximately 20 miles offshore of the State of Louisiana.

12.

ECP's leasehold interests consist of (a) a 100% undivided record title interest (with a 79.87% net revenue interest, which is subject to the ORRI discussed below) in and to that certain Oil and Gas Lease of Submerged Lands covering all of Block 72, East Cameron Area, as further described in **Exhibit A** attached hereto and incorporated herein (the "EC 72 Leasehold Interest") and (b) a 100% undivided operating rights interest (with a 80.51% net revenue interest, which is subject to the ORRI discussed below) in and to that certain Oil and Gas Lease of Submerged Land covering all of Block 71, East Cameron Area, as further described in **Exhibit A** attached hereto and incorporated herein (the "EC 71 Leasehold Interest", and together with the EC 72 Leasehold Interest, the "Leasehold Interests").

13.

The leases covering the Leasehold Interests are federal oil and gas leases, and as such are governed by the Outer Continental Shelf Lands Act and, therefore, are administered by the Minerals Management Service of the United States Department of the Interior (the "MMS").

14.

ECP is the official MMS-recognized operator for the Leasehold Interests and, in its capacity as "operator," controls exploration and production activities related to the Leasehold Interests.

15.

ECP's sole source of revenue consists of an approximate 8% net revenue interest in the proceeds generated from the sale of hydrocarbons produced from the Leasehold Interests. From this approximate 8% net revenue interest, ECP is, as the sole working interest owner, obligated to pay all lease operating costs and expenses.

## B. The Sukuk Securitization

16.

On or about July 5, 2006, certain certificateholders (the "Sukuk Certificateholders") invested $165,670,000 by purchasing certain Sukuk al-Musharaka certificates (the "Sukuk Certificates") issued by East Cameron Gas Company ("ECG"), as trustee for the East Cameron Gas Company Sukuk Trust (defined below), via a "Shariah compliant" securitization transaction (the "Sukuk Securitization").

17.

The Sukuk Securitization involved the securitization of hydrocarbon sales generated by ECP's Leasehold Interests.

18.

The Sukuk Certificates were sold to, *inter alia*, Islamic constituents who could participate in the transaction only if it was "Shariah compliant" in accordance with Islamic law. To satisfy this requirement, a complex transaction was entered into whereby a "Sukuk Trust" was created (known as the "East Cameron Gas Company Sukuk Trust"), for which ECG serves as trustee and in which the Sukuk Certificateholders purchased their interests via the Sukuk Certificates.

19.

The Sukuk Certificates were issued in a Regulation S international offering and a Regulation D U.S. private placement.

20.

Contemporaneously with the Sukuk Certificateholders purchase of approximately $165,670,000 in Sukuk Certificates, and as part and parcel of the implementation of the fully integrated Sukuk Securitization, ECG advanced the $165,670,000 generated by the sale of the

Sukuk Certificates to a special purpose entity named Louisiana Offshore Holding, LLC ("LOH"), pursuant to the terms and conditions set forth in the Funding Agreement dated July 5, 2006.

21.

Upon receipt of the $165,670,000 from ECG, and in implementation of the Sukuk Securitization, LOH used approximately $113,490,000 of those proceeds to purchase from ECP a specified volume of hydrocarbons to be produced from the Leasehold Interests in the form of an overriding royalty interest (the "Purchased ORRI").

22.

In addition to the Purchased ORRI, ECP also contributed an additional specified volume of hydrocarbons to LOH in the form of an overriding royalty interest (the "Contributed ORRI", and together with the Purchased ORRI, the "ORRI").

23.

The remaining portion of the $165,670,000, totaling $52,180,000, was used by LOH to (i) fund the "Earnout Account" in the amount of $38,280,000, and the "Reserve Account" in the amount of $9,500,000 (collectively, the "Accounts"), and (ii) purchase natural gas put options for $4,400,000.

24.

As collateral for the obligations of LOH under the Funding Agreement and the other related agreements documenting the Sukuk Securitization, and pursuant to the Deposit and Disbursement Agreement dated July 5, 2006, Deutsche Bank Trust Company Americas, a New York banking corporation, in its capacity as Collateral Agent (the "Collateral Agent"), was granted security interests for the benefit of ECG in the following (collectively, the "ECG

Collateral"): (i) all of LOH's assets, including the ORRI, and (ii) by way of collateral assignment, LOH's liens and security interests in (a) the working interests in ECP's leasehold interest in the Leasehold Interests, and (b) all the equipment, fixtures, inventory, goods, accounts, contract rights and general intangibles owned by ECP that are related to ECP's oil and gas interests in the Leasehold Interests.

25.

The Collateral Agent has a validly perfected first-priority security interests in the ECG Collateral and the Accounts.

### C. The EC 72 Transfer

26.

On November 28, 2007, ECP and OCX entered into the East Cameron Block 72 Farmout Agreement (the "Farmout Agreement") pursuant to which OCX was "vested with the exclusive right to develop or cause the development of the Subject Property[1] . . . to attempt to establish production from one or more of the hydrocarbon reservoirs accessible in the area . . . ." A true and correct copy of the Farmout Agreement is attached hereto and incorporated herein as **Exhibit B**.

27.

Through the Farmout Agreement — which was confected by OCP, ECP's General Partner — the right to develop certain portions of EC 72 was taken out of the reach of ECP's creditors and placed into OCX, a related company operated by Campbell Evans.

---

[1] "Subject Property" is defined as "that Assignment of Operating Rights respecting the East half (E/2) of EC 72 and the West half (W/2) of EC 72, below 10,400'. "Operating Rights" is defined as "full and complete rights to operate any Well on and under the Subject Property, in accordance with the rules and regulations of the MMS."

28.

Upon information and belief, the rights transferred under the Farmout Agreement were never marketed to third-parties in order to obtain the highest and best offer. In addition, the Farmout Agreement constituted a violation of the Production, Delivery and Marketing Agreement dated July 5, 2006 (the "PDMA"), which provided, in part, that ECP must submit a written request for the release of LOH's liens associated with EC 72 and that such release must not prejudice the delivery of the ORRI or dilute the value of the remaining ORRI. A true and correct copy of the PDMA is attached hereto and incorporated herein as **Exhibit C**.

29.

Upon information and belief, ECP never requested or received a release of LOH's liens as to the portion of EC 72 subject to the Farmout Agreement.

30.

Further, the only consideration that ECP received for the EC 72 Transfer was "a 25% Net Profits Interest in the equity retained by OCX, subject to the terms of any third party participation of financing."

31.

Thus, the EC 72 Transfer was made for no monetary consideration at a time when ECP was in desperate need for cash. As a result, OCX failed to pay reasonably equivalent value or fair consideration for the EC 72 Transfer.

32.

At the time of the EC 72 Transfer, ECP was insolvent or was rendered insolvent as a result of the transfer. Moreover, through the EC 72 Transfer, ECP intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they matured and became due.

33.

Finally, at the time of the transfer, ECP was engaged in or was about to engage in business and transactions for which the property and assets remaining with ECP represented unreasonably small capital and were unreasonably small in relation to that business and those transactions.

34.

In fact, after receiving ECP's semi-annual reserve report produced by Harper & Associates in May 2008, ECP's hydrocarbon reserves auditor, Gaffney, Cline & Associates ("GCA") concluded in its report (the "GCA Report") that because ECP had only $6.5 million of capital for operations remaining, there was insufficient capital to perform a majority of the future recompletions of reserves behind pipe.

35.

As a result, the GCA report indicated that ECP maintained significantly less amounts of gas reserves because a substantial amount of its reserves could not be recovered due to insufficient capital to bring these reserves into production.

## V. CAUSES OF ACTION

### A. Count 1 – Fraudulent Transfer (Actual Intent)

36.

ECP re-adopts and re-alleges the allegations set forth in paragraphs 1 through 35 as though full set forth herein.

37.

Prior to the Petition Date, ECP transferred its rights to develop portions of EC 72 to OCX.

38.

Said transfer was made for the benefit of OCX.

39.

Said transfer was an interest of ECP in property.

40.

Said transfer was made with the actual intent to hinder, delay, and/or defraud ECP's creditors.

41.

As a result of said transfer, ECP and its creditors have been harmed.

42.

Pursuant to 11 U.S.C. §§ 544, 548 and 550, ECP is entitled to avoid said transfer and recover from OCX the rights conveyed under the Farmout Agreement.

43.

ECP is entitled to an award of its attorneys' fees, pre-judgment and post-judgment interest, and costs to the fullest extent permitted by law.

### B. Count 2 – Fraudulent Transfer (Constructive)

44.

ECP re-adopts and re-alleges the allegations set forth in paragraphs 1 through 43 as though full set forth herein.

45.

Prior to the Petition Date, ECP transferred its rights to develop portions of EC 72 to OCX.

48.

Said transfer was made for the benefit of OCX.

49.

Said transfer was an interest of ECP in property.

50.

Said transfer was made at a time when ECP was insolvent or ECP became insolvent as a result of the transfer.

51.

Said transfer was made at a time when ECP was engaged or was about to engage in a business or a transaction for which any property or assets remaining with ECP after the transfer represented an unreasonably small capital or were unreasonably small in relation to the business or transaction.

52.

Through said transfer, ECP intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they matured and became due.

53.

ECP received less than fair consideration or reasonably equivalent value in exchange for making said transfer.

54.

As a result of said transfer, ECP and its creditors have been harmed.

55.

Pursuant to 11 U.S.C. §§ 544, 548 and 550, ECP is entitled to avoid said transfer and recover from OCX the rights conveyed under the Farmout Agreement.

56.

ECP is entitled to an award of its attorneys' fees, prejudgment and postjudgment interest, and costs to the fullest extent permitted by law.

## VI. RESERVATION OF RIGHTS

57.

Many of the transactions that are referenced in this Complaint may be the subject of other causes of action under applicable law. The ECP reserves the right to pursue such causes of action against OCX, OCE and other parties after further investigation and discovery.

**WHEREFORE**, East Cameron Partners, LP, Plaintiff herein, prays that the Court grant the following:

1. Enter judgment in its favor on all counts raised herein;

2. Declare that the EC 72 Transfer is void;

3. Set aside and cancel all documents evidencing the EC 72 Transfer to OCX, including, but not limited to, the Farmout Agreement;

4. Award ECP attorneys' fees, pre-judgment and post-judgment interest, and costs to the fullest extent permitted by law; and

5. Grant ECP such other and further relief to which ECP may be entitled, either at law or equity.

08-51207 - #489 File 02/26/10 Enter 02/26/10 15:28:32 Main Document Pg 12 of 13

<table>
<tr><td>LUGENBUHL, WHEATON, PECK,<br>RANKIN & HUBBARD</td><td>Respectfully submitted,<br><br>/s/ *signature*<br>STEWART F. PECK (#10403)<br>CHRISTOPHER T. CAPLINGER (#25357)<br>BENJAMIN W. KADDEN (#29927)<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone: (504) 568-1990<br>Facsimile: (504) 310-9195<br>Email: speck@lawla.com ; ccaplinger@lawla.com;<br>bkadden@lawla.com; ecarter@lawla.com<br>*Attorneys for East Cameron Partners, L.P.*</td></tr>
</table>

**PLEASE ISSUE SUMMONS TO:**

**Open Choke Exploration, LLC**
Though its registered agent,
C T Corporation System
350 N. St. Paul Street
Dallas, Texas 75201

**Open Choke Energy, LLC**
Though its counsel of record,
Louis M. Phillips
301 Main Street, Suite 1600
Baton Rouge, Louisiana 70801-1916